# EXHIBIT

# 2

As a duly authorized Nationwide associate entrusted with oversight

of the system of record from which this copy was produced,

based upon information and belief,

I certify that this copy of policy **91 21 HP 052922** was made at or

near the time of certification, as part of regularly conducted

business activities, and is a true and accurate copy of the official

record kept as part of regular business activities.


_____        <u>7/6/2011</u>

            Signature                Date



**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Number:**
91 21 HP 052922

**Issued:**
FEB 13, 2004

**Policyholder:**
(Named Insured)
TERRI ROEDER
113 BRAD CHRIS RD
NORTH
HOUGHTON LAKE MI 48629

**Policy Period From:**

DEC 06, 2003 to DEC 06, 2004 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

---

**Change Effective Date:**
FEB 06, 2004

**The Following Change(s) Have Been Made To Your Policy:**

This revised Declarations reflects recent changes made to your Insurance Policy.

**Residence Premises Information:**

113 BRAD CHRIS RD    ONE FAMILY
NORTH    FRAME DWELLING
ROSCOMMON TWP    YEAR OF CONSTRUCTION 1980
MI 486290000

PROTECTION CLASS 7
RATED PROTECTION CLASS 7
INSIDE MULTI CLASS AREA
WITHIN 1000 FT FROM HYDRANT
WITHIN 5 MILES FROM FIRE DEPT
FIRE DISTRICT 0002
PROTECTION TERRITORY 061

## SECTION I

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE–A–DWELLING | $ 115,800 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE–B–OTHER STRUCTURES | $ 11,580 | |
| COVERAGE–C–PERSONAL PROPERTY | $ 111,400 | |
| COVERAGE–D–LOSS OF USE | $ 115,800 | |

## SECTION II

| Liability Coverages | Limits Of Liability | EXCEPTIONS |
|---|---|---|
| COVERAGE–E–PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $ 500,000 | THE SECTION II LIABILITY COVERAGES - COVERAGE E AND COVERAGE F, ARE EXTENDED TO: |
| COVERAGE–F–MEDICAL PAYMENTS TO OTHERS EACH PERSON | $ 1,000 | 1 ADDITIONAL DWELLING UNIT(S) OWNED BUT NOT RENTED |

H5300

**FRAME: H 17**

# HOMEOWNER POLICY DECLARATIONS

Page 2 of 3

## Additional Dwelling Units and Farm Locations (Section II Liability Coverage)

**Owned But Not Rented**

ADDITIONAL DWELLING # 1/ 1 UNIT(S)

1431 NORRIS
WESTLAND, MI 48186

## OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | APPLIES |
| BOECKH INDEX 0602.0 | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ 5,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ 500 |
| CREDIT CARD - FORGERY | $ 1,000 |

### Options Applicable

| | |
|---|---|
| OPTION-A-JEWELRY, WATCHES AND FURS | $ 2,500 |
| OPTION-C-CAMERAS | $ 3,000 |
| OPTION-E-TOOLS | $ 15,000 |
| OPTION-J-EXTENDED REPLACEMENT COST | APPLIES |
| PERSONAL PROPERTY | |
| OPTION-K-REPLACEMENT COST PLUS | APPLIES |
| DWELLING | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | APPLIES |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | |
| FIRE EXTINGUISHERS | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |
| OPTION R-BROAD WATER BACKUP | 5% OF COV A |
| WATER BACKUP DEDUCTIBLE  $1000 | |

## PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $ . 664.00 |
| WATER BACKUP | $ 87.00 |
| **Annual Premium** | $ 751.00 |

**Annual Premium Includes Discounts For:**

CLAIM HISTORY DISCOUNT
HOME PROTECTIVE DEVICE

## FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 21 | Homeowners Policy |

**FRAME: I 17**

# HOMEOWNER POLICY DECLARATIONS

Non-Assessable
Page 3 of 3

**Policy Number:**
91 21 HP 052922

**Policyholder:**
(Named Insured)
TERRI ROEDER

**Issued:**
FEB 13, 2004

**Policy Period From:**
DEC 06, 2003 TO  DEC 06, 2004

## ADDITIONAL INTERESTS

**FIRST MORTGAGEE**

PGNF HOME LENDING
CORP
ISAOA ATIMA
801 N CASS AVE STE
300
WESTMONT IL 60559-1193
LOAN #03005369

**Issued By:** NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

**Countersigned At:** CANTON, OH

Prior Declaration Issued: FEB 10, 2004

**Home Office — Columbus, Ohio**

By: DAVENPORT INS & FINAN SER

## IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: DAVENPORT INS & FINAN SER
734-327-0176

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 330-489-5000

**FRAME: J 17**

# *Table of Contents*               *Homeowners Policy*

**INSURING AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1
**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .A1-A2
**COVERAGES:**

**Section I - Property Coverages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B1-B6

            Coverage A - Dwelling

            Coverage B - Other Structures

            Coverage C - Personal Property

            Coverage D - Loss of Use

            Additional Property Coverages

            **Perils Insured Against** . . . . . . . . . . . . . . . . . . . . . . . . . C1-C2

            **Property Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . D1-D3

            **Property Conditions** . . . . . . . . . . . . . . . . . . . . . . . . . . . .E1-E4

**Section II - Liability Coverages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1-G2

            Coverage E - Personal Liability

            Coverage F - Medical Payments to Others

            Additional Liability Coverages

            **Liability Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . H1-H4

            **Liability Conditions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . J1

**POLICY COVERAGE OPTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .K1-K7

**GENERAL POLICY CONDITIONS**

How Your Policy May Be Changed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1

Concealment or Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1

Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1

Non-Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1

Cancellation During Policy Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1

Policy Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2

Subrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2

Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2

Additional Insured - Non Occupant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2

Optional Payment of Premium in Installments . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

Non-Sufficient Funds Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

Dividends. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

**MUTUAL POLICY CONDITIONS**

Nationwide Mutual Insurance Company

Nationwide Mutual Fire Insurance Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

Includes copyrighted material of Insurance Services Offices, with its permission.
Copyright, Insurance Services Office, 1975, 1977.

HO-21

# *Insuring Agreement*

**We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages **you** have chosen are shown on the Declarations. This policy applies only to loss which occurs while the policy is in force.

# *Definitions*

Certain words and phrases used in this policy are defined as follows:

1. "WE", "US" and "OUR" refer to the company shown on the Declarations as the issuing company.

2. "YOU" and "YOUR" refer to the named **insured** shown in this policy who resides at the **residence premises**. These terms also mean **your** spouse who resides at the same **residence premises**.

3. "BUSINESS" includes trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis. **Business** also includes any occasional **business** pursuits of an **insured**, including ownership of rental property. It includes home care services regularly provided to a person or persons, other than **insureds** or **insureds'** relatives, for which there is monetary or other compensation. A mutual exchange of home care services is not considered compensation. Exceptions, if any, are noted on the Declarations.

4. "INSURED" means **you** and the following if residents of **your** household at the **residence premises**:
   a) **your** relatives.
   b) any other person under age 21 and in the care of **you** or **your** relatives.

5. "INSURED LOCATION" means:
   a) the **residence premises**.
   b) the part of any other premises, structures, and grounds used by **you** as a residence and shown in the policy; also any of these acquired by **you** during the policy period for **your** use as a residence.
   c) a premises **you** use with premises defined in 5. a) or 5. b).
   d) a part of a premises, not owned by an **insured**, where an **insured** is temporarily living.
   e) vacant land, other than farm land, owned by or rented to an **insured**.
   f) land, other than farm land, owned by or rented to an **insured** on which a one or two-family dwelling is being built as a residence for an **insured**.
   g) cemetery plots or burial vaults of an **insured**.
   h) a part of a premises rented on occasion to an **insured** for purposes other than **business**.

6. "MOTOR VEHICLE" means:
   a) a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to **motor vehicle** registration.
   b) a trailer or semi-trailer designed for travel on public roads and subject to **motor vehicle** registration.
   c) any vehicle while being towed by or carried on a vehicle defined in 6. a) or 6. b).

7. "RESIDENCE PREMISES" means the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated.

8. "AIRCRAFT" means any machine or device capable of atmospheric flight, except models.

A1

*Insuring Agreement* _____

9.   "ACTUAL CASH VALUE" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

10.  "FOUNDATION" means a building's substructure including substructural walls, i.e., basement walls, crawl space walls, etc.

11.  "BIOLOGICAL DETERIORATION OR DAMAGE" meaning damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced.  Fungi as used above include, but are not limited to:  yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

Other words are also defined. All defined words are in bold print.



# Section I
# Property Coverages

## Coverage Agreements

### COVERAGE A — DWELLING

**We** cover:

1.  the dwelling on the **residence premises** used mainly as **your** private residence, including attached structures and attached wall-to-wall carpeting.

2.  materials or supplies on or adjacent to the **residence premises** for use in construction, alteration or repair of:
    a) the dwelling; or
    b) Coverage B — Other Structures.

**We** do not cover land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE B — OTHER STRUCTURES

**We** cover other structures on the **residence premises**. They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

**We** do not cover:

1.  other structures used in whole or in part for **business** purposes.

2.  other structures rented or held for rental to anyone, unless used solely as a private garage.

3.  land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE C — PERSONAL PROPERTY

**We** cover personal property owned or used by an **insured** at the **residence premises**. At **your** request, **we** will cover personal property owned by others. It must be on the part of the **residence premises** occupied by an **insured**. This extension of coverage does not increase the limit of liability.

**Our** limit of liability for personal property while away from the **residence premises** is 10 percent of the limit of liability for Coverage C or $1,000, whichever is greater. This 10 percent limitation does not apply to personal property:

1.  removed from the **residence premises** due to a covered loss; or

2.  in transit to and from, or while in a newly acquired principal residence for 30 days. The 30 days start right after **you** begin to move the property; or

3.  stored in a commercial storage facility up to 180 days. The 180 days start when **you** begin to move the property. A commercial storage facility does not include a self-storage unit.

**SPECIAL LIMITS OF LIABILITY.** Certain property is subject to special limits which do not increase the personal property limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

B1

*Section I — Property Coverages* _____

The following special limits apply only to theft losses:

1. $1,000 for jewelry, watches, furs, and precious and semi-precious stones.
2. $1,000 for guns, including accessories.
3. $1,000 for cameras (film, digital or video), including accessories. It does not include cameras used in **business**.
4. $2,500 for silverware, silver-plated ware, goldware, gold-plated ware, and pewterware.
5. $1,000 for tools not used in **business**. This limit does not apply to lawn and garden tools used to service the **residence premises**.

The following special limits apply to all covered losses:

6. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins, stored value cards, smart cards, gift certificates and medals.
7. $1,000 for securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets.
8. $3,000 for computers, including hardware and software accessories, operating software, application software or other similar software, which can be replaced with like kind and quality on the retail market. This includes electronic storage media such as, but not limited to, tapes or diskettes. Stored data is not covered.
9. $500 for **business** property on the **residence premises** except computers including their hardware and software described above.
10. $1,000 for watercraft and outboard motors, including trailers, furnishings and equipment.
11. $1,000 for utility type trailers not used with watercraft.
12. $1,000 for manuscripts, regardless of the medium.

**PROPERTY NOT COVERED. We** do not cover:

1. articles separately described and specifically insured in this or any other insurance.
2. animals, birds or fish.
3. house or travel trailers.
4. **motor vehicles** or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:
   a) their parts or equipment, whether attached to or separated from the **motor vehicle** or motorized land conveyance; or
   b) accessory equipment; or
   c) any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the **motor vehicle** or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment. The most **we** will pay is $200 in any one loss, regardless of the number of such items. The loss must be caused by a covered peril.

   **We** do cover vehicles or conveyances not subject to motor vehicle registration which are:
   a) used solely to service the **insured's** residence;
   b) designed to assist the handicapped; or
   c) a motorized golf cart while being operated to or from, or on the premises of a golf course.
5. **aircraft** and parts.
6. property of roomers, boarders, and other tenants. Personal property, at the **residence premises**, belonging to roomers and boarders related to an **insured** is covered.

B2

7. property in an apartment regularly rented or held for rental to others by an **insured**.

8. property rented or held for rental to others away from the **residence premises**.

9. **business** property away from the **residence premises**.

## COVERAGE D — LOSS OF USE

**We** cover, subject to the coverage limit which is the total limit, all of the following:

1. **Additional Living Expense.** If a covered loss requires **you** to leave the **residence premises**, **we** will pay the required increase in living expenses **you** incur to maintain **your** normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if **you** permanently relocate, for the shortest time required for **your** household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

2. **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the **residence premises** rented to others or held for rental, **we** will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the **residence premises** is uninhabitable. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

3. **Prohibited Use.** If a civil authority prohibits **your** use of the **residence premises** because of direct damage to neighboring premises by a peril insured against in this policy, **we** will pay the resulting loss, for up to two weeks while use is prohibited, for:
   a) Additional Living Expense; and
   b) Fair Rental Value.

**We** do not cover loss or expense due to cancellation of a lease or agreement.

This coverage does not apply to an **insured's business**, whether conducted on or off any **insured location**.

No deductible applies to this coverage.

# *Additional Property Coverages*

These additional property coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

1. **Debris Removal. We** will pay reasonable expense **you** incur removing debris of covered property, if the peril causing the loss is covered.  This includes debris of trees that cause damage to covered property or covered structures, or that obstruct access to covered structures if such access is necessary to repair or replace the structure. **We** will pay only to move away from, or off of, covered property or covered structures, the debris of trees that cause damage to covered property. An additional five (5) percent of the limit of liability for the damaged property will be available when the amount payable for the property loss plus the debris removal expense exceeds the limit of liability.

2. **Live Tree Debris Removal.** In the event of a loss, **we** will also pay the reasonable expense **you** incur for the removal of live tree debris from the **residence premises**, that does not cause damage to covered property or covered structures.  The most **we** will pay is $500, regardless of the number of trees requiring removal, for any one loss. Loss must be the result of a Coverage C Perils Insured Against.  This is an additional amount of coverage.

3. **Reasonable Repairs. We** will pay reasonable cost **you** incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. This expense is included in the limit of liability applying to the damaged property.

4. **Trees, Shrubs, Plants, and Lawns. We** cover trees, shrubs, plants, or lawns on the **residence premises** for loss caused by the following perils: fire and lightning; explosion; riot and civil commotion; **aircraft**; vehicles not owned or operated by a resident of the **residence premises**; vandalism or malicious mischief; collapse of a building; or, theft. Liability is limited to five (5) percent of the Coverage A limit of liability for all trees, shrubs, plants and lawns. It is limited to $500 for one tree, shrub or plant. This coverage may increase the limit of liability.

   **We** do not cover property grown for **business** purposes.

5. **Fire Department Service Charge. We** will pay up to the amount stated on the Declarations for **your** liability under contract or agreement for customary fire department charges. This applies when the charges result from the fire department being called to save or protect covered property from a covered peril. **We** do not cover fire department service charges if **you** do not have a valid or in-force contract or agreement with the responding fire department. No deductible applies to this coverage.

6. **Property Removed.** Covered property removed from a premises because it is in danger from a covered peril is covered for direct loss from any cause. The property is covered while being removed and for 30 days while removed. After 30 days the property is covered for direct loss from a peril insured against. This does not change the coverage limit.

7. **Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. We** will pay up to the amount stated on the Declarations for :

   a) the legal obligation of an **insured** to pay theft or unauthorized use of credit cards (including Electronic Fund Transfer Cards or Access Devices) issued to or registered in an **insured's** name. However, **we** do not cover use by a resident of **your** household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an **insured** has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.

   b) loss to an **insured** caused by forgery or alteration of a check or negotiable instrument.

   c) loss to an **insured** through good faith acceptance of counterfeit United States or Canadian paper currency.

   All losses resulting from a series of acts committed by any one person or groups of persons or in which any one person or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

   **We** do not cover loss arising out of the **business** pursuits, or dishonesty of an **insured**. No deductible applies to this coverage.

   **We** may make any investigation and settle any claim or suit as **we** decide is appropriate. **Our** obligation to defend a claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.

   If a claim is made or a suit is brought against an **insured** for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, **we** will provide defense at **our** expense by counsel of **our** choice.

   **We** may defend at **our** expense an **insured** or an **insured's** bank against a suit for the enforcement of payment under the forgery coverage.

8. **Inflation Protection Coverage.** If the Declarations show this coverage applies, **we** will adjust the limit of liability on the Declarations for Section I — Coverages. The limit of liability will change as the appropriate index, shown on the Declarations, changes.

**We** will compare the latest available index to the index as of the effective date of this policy. **We** will adjust the limit of liability by the percentage change in the index. It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.

If **you** request a change in the dwelling limit of liability, the effective date of this coverage will be amended to the effective date of that change.

This coverage will not reduce **our** limit of liability during the current policy period below that for which premium has been paid.

9. **Consequential Loss. We** cover insured personal property in a building at the **residence premises** for loss due to temperature change resulting from power interruption. There must be damage to the **residence premises** caused by a covered peril.

10. **Refrigerated Property.** If a power interruption occurs, off the **residence premises, we** will pay up to a maximum of $500 for loss of contents in a freezer or refrigerator due to temperature changes. **You** must use all reasonable means to protect the covered property from damage or this coverage is void.

11. **Lock Replacement. We** will pay up to $100 to replace the exterior door locks on **your residence premises** with deadbolt locks or to rekey the lock cylinders of existing deadbolt locks, whichever is less. This coverage applies only if the keys to **your residence premises** are stolen.

    No deductible applies to this coverage.

12. **Collapse. We** cover direct physical loss to covered property described in Coverages A, B and C caused by the complete **collapse** of a building structure or any part of a building structure. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **collapse** if:

    a) it is standing but in danger of falling down or caving in;

    b) it is standing but has separated from any other part of the building;

    c) it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

    The **collapse** must be sudden and accidental and caused by one or more of the following:

    a) one of the Coverage C — Personal Property perils insured against;

    b) hidden decay of a supporting or weight bearing building structural member;

    c) hidden insect or vermin damage of a supporting or weight bearing building structural member;

    d) weight of:

        (1) contents, equipment, animals or people; or

        (2) rain, ice, sleet or snow which collects on the roof; or

    e) defective material or methods used in the construction, repair or remodeling or renovation if the **collapse** occurs in the course of work being done.

    The presence of any decay, insect or vermin damage must be unknown to an **insured** prior to **collapse**.

    Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, **foundation**, retaining wall, bulkhead, pier, wharf, or dock is not included under items b), c), d), or e) unless the loss is a direct result of the **collapse** of a building.

    The limit of liability applying to the covered property is not increased by this coverage.

13. **Household Supplies. We** will pay up to a maximum of five (5) percent of the Coverage A — Dwelling coverage limit for direct physical loss to property described in Coverages A and B arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage, leakage, or escape of household supplies on the **residence premises**. Household supplies includes

items currently in use or in **your** possession at the **residence premises**, in normal household quantities such as household cleaning supplies, pesticides, and other similar items.

**Section I — Property Exclusion 1.j)** does not apply to any loss covered under this **Additional Property Coverage, Household Supplies**. In no event, however, will **we** ever cover:

a) loss arising out of materials containing asbestos, lead, formaldehyde, fuel or petroleum products; or

b) any fee, assessment or expense of any governmental authority; or

c) loss arising out of household supplies possessed or used:

    (1) for **business** purposes;

    (2) for illegal purposes;

    (3) by contractors; or

    (4) on driveways or walkways.

14. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss results in **biological deterioration or damage** to property covered under Coverages A, B, and C, **we** will pay, up to the amount shown on the Declarations, for:

a) the cost to clean up, remove and dispose of the **biological deterioration or damage** to covered property;

b) the cost to tear out and replace any part of the building or other covered property needed to gain access to the **biological deterioration or damage**;

c) the cost of testing which is performed in the course of clean up and removal of the **biological deterioration or damage** from the **residence premises**; and

d) additional living expenses **you** may incur, as outlined under Coverage D, that results from items a), b) or c) above.

The coverage amount shown on the Declarations for this Additional Property Coverage is the most **we** will pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if **you** report the **biological deterioration or damage** to **us** within 180 days of having first discovered the **biological deterioration or damage**.

The covered cause of loss that causes or results in **biological deterioration or damage** to covered property must have occurred during the policy period.

This is an additional amount of coverage.

# Perils Insured Against

(Section I)

## Covered Causes of Loss

### COVERAGE A — DWELLING and
### COVERAGE B — OTHER STRUCTURES

**We** cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section I — Property Exclusions.

### COVERAGE C — PERSONAL PROPERTY

**We** cover accidental direct physical loss to property described in Coverage C caused by the following perils except for losses excluded under Section I — Property Exclusions:

1. fire or lightning.

2. windstorm or hail.

   Direct loss caused by rain, snow, sleet, sand or dust driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered. This peril includes loss to:
   a) rowboats and canoes inside or outside a building.
   b) other watercraft and outboard motors, including their trailers, furnishings, and equipment, while inside a fully enclosed building.

3. explosion.

4. riot or civil commotion.

5. **aircraft**, missiles propelled and spacecraft.

6. vehicles.

7. sudden and accidental damage from smoke. This does not include loss due to smoke from farm or industrial operations.

8. vandalism and malicious mischief.

   This peril does not include loss to property on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

9. theft, including attempted theft. Loss of property from a known location when it is likely the property was stolen is covered. Loss of precious or semi-precious stones from their settings is not covered. This peril does not include loss caused by any theft:
   a) committed by an **insured**.
   b) in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied.
   c) of money, securities, stamps, jewelry, watches, gems, articles of gold, silver, or platinum from any part of a **residence premises** usually occupied solely by an **insured** while rented to other than an **insured**.

C1

This peril does not include loss caused by theft that occurs away from the **residence premises** of:

a) property while at any other residence owned by, rented to, or occupied by an **insured**, except while an **insured** is temporarily living there. Property of an **insured** student is covered at a residence away from home if the student has been there within 45 days prior to the loss.

b) trailers and campers.

c) watercraft and outboard motors, including their furnishings and equipment.

10. falling objects. This peril does not include loss to:

a) property in a building, unless the roof or an exterior wall of the building is first damaged by a falling object.

b) the falling object itself.

11. weight of ice, snow, or sleet which causes damage to property in a building.

12. accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. This peril does not include loss:

a) caused by or resulting from water that backs up from outside the dwelling's plumbing system and enters through sewers or drains; or water entering or overflowing a sump pump, sump pump well or other system designed to remove subsurface water drained from the **foundation** area except as may be provided elsewhere in this policy or by endorsement.

b) due to continuous or repeated seepage or leakage of water, steam or moisture which occurs over a period of time and results in deterioration, corrosion, or rust.

c) due to freezing except as provided by the peril of freezing.

d) to the system or appliance from which the water, steam or moisture escaped.

13. accidental electrical damage to electrical appliances, devices, fixtures and wiring. This peril does not include loss to transistors and tubes including picture tubes.

14. sudden and accidental tearing apart, cracking, bursting, burning or bulging of:

a) a steam or water heating system.

b) a fire protective sprinkler system.

c) an air conditioning system.

d) an appliance for heating water.

Freezing is not covered under this peril.

15. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance. This peril does not include loss on the **residence premises** while unoccupied, vacant or under construction unless **you** have used reasonable care to:

a) maintain heat in the building; or

b) shut off the water supply and drain the system and appliances of water.

# *Property Exclusions*

(Section I)

1.  **We** do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

    a)  Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking. Volcanic eruption means: eruption; or discharge from a volcano.

    Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

    b)  Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

    (1)  flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

    (2)  water or water-borne material which:

    (a)  backs up through sewers or drains from outside the dwelling's plumbing system; or

    (b)  overflows a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

    (3)  water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, **foundation**, swimming pool, or other structure.

    Resulting direct loss by fire, explosion, or theft is covered.

    c)  Neglect, meaning neglect of the **insured** to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.

    d)  War or Warlike Acts. This includes insurrection, rebellion or revolution. Discharge of a nuclear weapon is considered a warlike act even if accidental.

    e)  Nuclear Hazard, meaning any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these. Loss caused by nuclear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifically named in or otherwise included as a covered peril in Section I.

    Resulting direct loss by fire is covered.

    f)  Increased Hazard, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an **insured**.

    g)  Intentional Acts, meaning loss resulting from an act committed by or at the direction of an **insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds**, except for innocent co-**insureds** when the loss is caused by fire.

    h)  Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

D1

*Section I — Property Exclusions*_____

    i)  **Collapse**, except as provided by Section I — Additional Property Coverages — **Collapse**.

    j)  Contamination or Pollution, meaning any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:

        (1)  solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;

        (2)  vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;

        (3)  fuel oil and other petroleum products; or

        (4)  any other waste materials or other irritants, contaminants or pollutants.

        except as provided by Section I — Additional Property Coverages — Household Supplies.

    k)  Loss Assessments, unless, optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

    l)  Government Acts, meaning any loss caused by seizure, destruction, or confiscation by order of any government or public entity.

        Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.

    m)  **Biological deterioration or damage**, except as provided by Section I — Additional Property Coverages — **Biological Deterioration or Damage Clean Up and Removal**.

2.  **We** do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

    a)  A fault, weakness, defect or inadequacy in the:

        (1)  specifications, planning, zoning;

        (2)  design, workmanship, construction, materials;

        (3)  surveying, grading, backfilling;

        (4)  development or maintenance;

        of any property on or off the **residence premises**, whether intended or not.

    b)  Acts or decisions of any person, group, organization or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned.

    c)  Weather conditions, if contributing in any way with an exclusion listed in paragraph 1. of this Section.

3.  **We** do not cover loss to property described in Coverages A and B resulting directly from any of the following:

    a)  freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

        This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless **you** have used reasonable care to:

        (1)  maintain heat in the building; or

        (2)  shut off the water supply and drained the system and appliance of water.

    b)  freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

    (1) fence, pavement, patio or swimming pool;

    (2) **foundation**, retaining wall, or bulkhead; or

    (3) pier, wharf or dock.

c) theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

d) vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

e) continuous or repeated seepage or leakage of water or steam over a period of time from a heating, air conditioning or automatic protective sprinkler system; household appliance; or plumbing system that results in deterioration, rust, or wet or dry rot. Continuous or repeated seepage or leakage from, within, or around any shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings or floors, is also excluded.

If loss caused by water or steam is not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. **We** do not cover loss to the system or appliance from which the water or steam escaped.

f) (1) wear and tear, marring, deterioration;

    (2) inherent vice, latent defect, mechanical breakdown;

    (3) smog or rust;

    (4) smoke from agricultural smudging or industrial operations;

    (5) release, discharge, or dispersal of contaminants or pollutants;

    (6) settling, cracking, shrinking, bulging or expansion of pavements, patios, **foundations**, walls, floors, roofs or ceilings;

    (7) birds, vermin, rodents, insects or domestic animals. Resulting breakage of glass constituting part of a covered building is covered;

    (8) root growth, movement or action; or

    (9) mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material.

    (10) mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

If any of items f)(1) through (8) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, **we** cover loss caused by the water not otherwise excluded. **We** also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which the water escaped.

Under exclusions 3.a) through 3.f), any loss that follows is covered unless it is specifically excluded.

# *Property Conditions*

(Section I)

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, **we** will not be liable:

   a) to the **insured** for more than the **insured's** interest.

   b) for more than the limit of liability.

2. **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy is the amount of loss paid by the **insured**. **We** pay for covered loss above the deductible amount.

3. **Your Duties after Loss.** In case of loss, **you** must:

   a) give immediate notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company. If loss is caused by or results from the peril of hail, loss must be reported to **us** or **our** agent within 6 months of the loss event.

   b) protect the property from further damage. **You** must make repairs required to protect the property and keep a record of repair expenses.

   c) as often as **we** reasonably require:

   (1) show **us** the damaged property; and

   (2) provide records and documents **we** request and permit **us** to make copies.

   (3) submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

   d) submit to **us**, within 60 days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

   (1) the time and cause of loss.

   (2) interest of the **insured** and all others in the property involved and all liens on the property.

   (3) other insurance that may cover the loss.

   (4) changes in title or occupancy of the property during the term of the policy.

   (5) specifications of any damaged property and detailed estimates for repair of damage.

   (6) a list of damaged personal property showing in detail the quantity, description, **actual cash value**, and amount of loss. Attach all bills and receipts that support the figures.

   (7) receipts for additional living expenses and records supporting the fair rental value loss.

   (8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

4. **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by **us** paying:

   a) **actual cash value** at the time of loss, the amount not to exceed **actual cash value**, needed to repair or replace:

   (1) personal property and structures that are not buildings;

   (2) carpeting (including wall-to-wall) and cloth awnings;

E1

(3) outdoor antennas, whether or not attached to the building;

(4) home appliances, unless built in as a part of the dwelling.

b) the cost to repair or replace without deduction for depreciation for buildings in Coverage A or B based on equivalent construction and use on the same premises except:

(1) **we** will pay no more than the **actual cash value** of the damage until the repair or replacement is made when the cost to repair or replace the damage is more than $1,000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less.

(2) when **you** claim loss or damage to buildings on an **actual cash value** basis. **You** may make claim within 180 days after the loss for any added loss based on the cost to repair or replace.

(3) if **you** choose not to repair or replace, **we** will pay only the **actual cash value** of the damaged building, not to exceed the applicable limit of liability.

5. **Loss Payment. We** will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:

a) In case of loss to a pair or set, **we** may elect to:

(1) repair or replace a part to restore the pair or set to its value before the loss; or

(2) pay the difference between **actual cash value** of the property before and after the loss.

b) At **our** option, **we** may repair or replace any part of the damaged property with equivalent property, providing **we** give **you** written notice within 30 days after receiving **your** signed, sworn proof of loss.

c) **We** will pay **you** unless some other person is named in this policy to receive payment.  Payment will be made within 60 days after **we** receive **your** proof of loss and:

(1) reach agreement with **you**; or

(2) there is an entry of a final judgment; or

(3) there is a filing of an appraisal award with **us**.

d) After **we** have paid for a loss by theft or disappearance of covered property, **we** have the right to all or part of any recovered property. **You** must protect these rights and inform **us** of any recovery. If **you** wish to retain the recovered property, **our** loss payment will be adjusted by the value of such property.

e) If a municipality has elected to apply the provisions of Michigan Public Act 217, a part of **our** payment for loss to insured real property in that municipality due to fire, explosion, windstorm or hail, vandalism or malicious mischief, or riot or civil commotion will be withheld in the event that the loss is subject to the provisions of the Act.  The withheld amount will be paid either to the municipality, a licensed contractor performing services on the insured property, or to the named **insured** and mortgagee, if any, according to the provisions of Public Act 217.  **We** will notify the named **insured**, any mortgagee and the municipality of any loss subject to the provisions of Public Act 217.

f) After **we** have paid for a loss, **we** have the right to all or part of any salvageable property.  **We** may permit **you** to keep the damaged property but **we** will reduce the amount of the loss paid to **you** by the value of the retained property.

6. **Appraisal. If you** and **we** fail to agree on the amount of loss, either can demand that the amount be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the

written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select a competent, impartial umpire.

The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us**. Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **actual cash value**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between **you** and **us**. The appraisal award cannot be used by either **you** or **us** in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon **you** and **us**. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you** and **us**.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. Any action must be started within one year after the date of loss or damage. The time between when **you** notify **us** of the loss or damage and **we** formally deny the claim does not apply to the one year period allowed for starting action. **You** may not begin any action against **us** until **we** have formally denied the claim.

9. **Abandonment of Property. We** need not accept property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee. If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If **we** deny **your** claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a) notifies **us** of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.

   b) pays premium due under this policy on **our** demand, if **you** neglected to pay the premium.

   c) submits a signed, sworn proof of loss within 60 days after receiving notice from **us** of **your** failure to do so. Policy conditions relating to Your Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

If **we** cancel the policy, **we** will notify the mortgagee at least 10 days before the cancellation takes effect. If **we** pay the mortgagee for loss and deny payment to **you**:

   a) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b) at **our** option, we may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, **we** will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

If a municipality has elected to apply the provisions of Michigan Public Act 217, a part of **our** payment for loss to insured real property in that municipality due to fire, explosion, windstorm or hail, vandalism or malicious mischief, or riot or civil commotion will be withheld in the event that the loss is subject to the provisions of the Act.   The withheld amount will be paid either to the municipality, a licensed contractor performing services on the insured property, or to the named **insured** and mortgagee, if any, according to the provisions of Public Act 217.   **We** will notify the named **insured**, any mortgagee and the municipality of any loss subject to the provisions of Public Act 217.

11. **No Benefit to Bailee.** This insurance does not benefit a person or organization that is caring for or handling **your** property for a fee.

12. **Glass Replacement. We** will replace covered glass using safety glazing materials when required by ordinance or law.



# Section II
# Liability Coverages

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1.  "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2.  "PROPERTY DAMAGE" means physical injury to or destruction of tangible property. This includes its resulting loss of use.

3.  "RESIDENCE EMPLOYEE" means an employee of an **insured** who performs duties in connection with maintenance or use of the **residence premises**. This includes household or domestic services or similar duties elsewhere not in connection with the **business** of an **insured**.

4.  "OCCURRENCE" means **bodily injury** or **property damage** resulting from an accident, including continuous or repeated exposure to the same general condition. The **occurrence** must be during the policy period.

5.  "INSURED" means **you** and the following persons who regularly live at the **residence premises**:
    a)  **your** relatives;
    b)  any other person under age 21 and in the care of **you** or **your** relatives;
    c)  a person or entity legally responsible for animals or covered watercraft that are either owned by or in the custody of an **insured**. A person or entity using or having custody of these animals or watercraft in the course of **business**, or without permission of the owner, is not an **insured**.
    d)  any person operating, utilizing, or maintaining a covered vehicle while engaged in **your** employment or that of an **insured**.

# Coverage Agreements

## COVERAGE E — PERSONAL LIABILITY

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. **We** will provide a defense at **our** expense by counsel of **our** choice. **We** may investigate and settle any claim or suit. **Our** duty to defend a claim or suit ends when the amount **we** pay for damages equals **our** limit of liability.

**We** will pay **our** share of any loss if there is other collectible liability insurance. **Our** share is **our** proportion of the total insurance limits for the loss. However, for **motor vehicles** and watercraft covered by this policy, this insurance is excess over any other collectible insurance except insurance written specifically as excess over the applicable limits of liability of this policy.

G1

## COVERAGE F — MEDICAL PAYMENTS TO OTHERS

**We** will pay the necessary medical and funeral expenses incurred within three years after an accident causing **bodily injury**. This coverage does not apply to **you**. It does not apply to regular residents of **your** household. It does apply to **residence employees**. Payment under this coverage is not an admission of **our** or an **insured's** liability. This coverage applies as follows:

1. to a person on the **insured location** with consent of an **insured**.

2. to a person off the **insured location**, if the **bodily injury**:
   a) arises out of a condition in the **insured location**.
   b) is caused by the activities of an **insured**.
   c) is caused by a **residence employee** of an **insured**.
   d) is caused by an animal owned by or in the care of an **insured**.

# *Additional Liability Coverages*

**We** will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.

1. **Claims Expenses. We** will pay:
   a) expenses **we** incur and costs taxed against an **insured** in a legal action **we** defend.
   b) premiums on bonds required in a suit **we** defend. This does not include bond amounts greater than the Coverage E limit of liability. **We** are not obligated to apply for or furnish a bond.
   c) reasonable expenses incurred by an **insured** at **our** request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for assisting **us** in the defense of a claim or suit.
   d) post-judgment interest. This must accrue after entry of the judgment. It must accrue before **we** pay or deposit in court that part of the judgment which does not exceed the coverage that applies.

2. **First Aid Expenses. We** will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

3. **Damage to Property of Others. We** will pay for **property damage** to property of others caused by an **insured** regardless of legal liability. **We** will pay up to $1,000 per **occurrence**, but not more than the smallest of the replacement cost or the cost to repair the damaged property. **We** will not pay for **property damage**:
   a) to property covered under Section I.
   b) caused intentionally by an **insured** who is age 13 or older.
   c) to property owned by or rented to an **insured**, a tenant of an **insured**, or a resident in **your** household.
   d) arising out of:
      (1) **business** pursuits.
      (2) an act or omission in connection with a premises owned, rented, or controlled by an **insured**, other than an **insured location**.
      (3) the ownership, maintenance or use of a **motor vehicle**, **aircraft**, or watercraft.

# *Liability Exclusions*

(Section II)

1.  Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to **bodily injury** or **property damage**:

    a)  caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

    This exclusion 1.a) does not apply to corporal punishment of pupils.

    b)  caused by or resulting from an act or omission which is criminal in nature and committed by an **insured**.

    This exclusion 1.b) applies regardless of whether the **insured** is actually charged with, or convicted of a crime.

    c)  arising out of **business** pursuits of an **insured**.

    This exclusion 1.c) does not apply to:

    (1)  activities normally considered non-**business**.

    (2)  occasional or part time self-employed **business** pursuits of an **insured** under age 19 years old (age 23 if a full-time student).

    (3)  an office, school, studio, barber or beauty shop on the **residence premises** if noted on the Declarations.

    (4)  home care services provided by or at the direction of an **insured** on or from the **residence premises** if noted on the Declarations.

    d)  arising out of the rental or holding for rental of any part of any premises by an **insured**. Exceptions, if any, are noted on the Declarations.

    This exclusion 1.d) does not apply to the rental or holding for rental of part of **your residence premises**:

    (1)  occasionally for the exclusive use as a residence.

    (2)  unless intended as a residence by more than two roomers or boarders.

    (3)  as a private garage.

    e)  arising out of any professional liability except teaching.

    f)  arising out of premises owned or rented to an **insured** but not an **insured location**.

    This exclusion 1.f) does not apply to **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

    g)  arising out of the ownership, maintenance, use of, entrustment or the negligent supervision by an **insured** of; or statutorily imposed liability on an **insured** related to the use of:

    (1)  an **aircraft**.

    (2)  a **motor vehicle** or all other motorized land conveyance owned by or operated by, or rented or loaned to an **insured**.

    This exclusion 1.g)(2) does not apply to:

    (a)  a vehicle owned by an **insured** and designed for recreation off public roads while on an **insured location**.

H1

(b) a motorized golf cart while being operated to or from, or on the premises of a golf course.

(c) a vehicle not subject to **motor vehicle** registration which is:

   i) used to service an **insured's** residence; or

   ii) designed for assisting the handicapped.

(d) a vehicle in dead storage on an **insured location**. Dead storage means physically prepared for long term storage.

(e) a boat, camp, home or utility trailer not being towed or carried on a vehicle defined in general Definition 6.a).

(f) **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

(3) a watercraft owned or operated by, or rented or loaned to an **insured**:

(a) if the watercraft is a personal watercraft powered by an internal combustion engine and utilizing a water jet pump or has inboard, inboard-outdrive or outboard motor power of more than 50 horsepower.

(b) if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length.

(c) while rented to others.

(d) while being used to carry persons or property for a fee.

(e) while being used without an **insured's** permission.

(f) while being used in an official race or speed test. This exclusion does not apply to sailboats.

(g) if it is an airboat, air cushion or similar type watercraft.

This exclusion 1.g)(3) does not apply:

(1) while the watercraft is stored.

(2) when an **insured** rents or borrows a nonowned outboard motor boat for eight (8) or less consecutive days.

(3) to **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

h) caused by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear weapon is a warlike act, even if accidental.

i) resulting from an **insured** transmitting a communicable disease.

j) arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage or escape of:

(1) solid, liquid, gaseous, or thermal irritants or contaminants, including smoke (except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace), vapors, soot, fumes, acids, alkalis, toxic chemicals and wastes, toxic liquids or toxic gases;

(2) fuel oil and other petroleum products;

(3) **mold**; or

(4) any other waste materials or other irritants, contaminants or pollutants.

This exclusion 1.k) does not apply:

(1) to **bodily injury** arising out of routine lawn and garden care of an **insured location**; or

(2)  if the discharge, dispersal, release or escape is sudden and accidental.

k)  resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

l)  resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.

This exclusion 1.m) does not apply to:

(1)  the legitimate use of prescription drugs by a person following orders of a licensed physician; or

(2)  where involvement with controlled substance(s) is not within the direct knowledge of an **insured**.

m)  **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under:

(1)  a workers' compensation;

(2)  an unemployment compensation;

(3)  a non-occupational or occupational disease;

(4)  a disability benefits;

or any similar law.

n)  caused by any of the following animals owned by or in the care of an **insured**:

(1)  the following types of pure bred dogs:

(a)  American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;

(b)  Doberman Pinschers;

(c)  Rottweilers;

(d)  Chow Chows; or

(e)  Presa Canarios;

(2)  wolf hybrids;

(3)  trained attack or guard dogs;

(4)  any fighting dog or dog bred for fighting; or

(5)  any dog with a prior history of:

(a)  causing **bodily injury** to a person; or

(b)  attacking or biting another animal;

established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

(6)  any non-licensed dog.

o)  arising out of **biological deterioration or damage**.

2.  Coverage E — Personal Liability does not apply to:

a)  liability under any loss assessment contract or agreement unless optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

b)  liability assumed under any unwritten contract or agreement, or by contract or agreement in connection with any **business** of an **insured**.

c)  **property damage** to property owned, produced or distributed by an **insured**.

H3

d) **property damage** to property rented to, occupied or used by, or in the care of an **insured**.

This exclusion 2.d) does not apply to **property damage**:

(1) caused by fire, smoke, or explosion; or

(2) to house furnishings or premises rented to, occupied or used by or in the care of an **insured** for which the **insured** is legally liable.

e) **bodily injury** or **property damage** for which an **insured** under this policy is also an **insured** under a nuclear energy liability policy; or would be an **insured** but for its termination upon exhaustion of its limit of liability.

f) **bodily injury** to an **insured** as defined in Section II — Liability Definitions 5.a) and 5.b).

3. Coverage F — Medical Payments to Others does not apply to **bodily injury**:

a) to a **residence employee** if it occurs off the **insured location**. It does apply if the **bodily injury** arises out of the **residence employee's** employment by an **insured**.

b) from a nuclear reaction, radiation or radioactive contamination, or a consequence of any of these. It does not matter that these are controlled or uncontrolled.

# *Liability Conditions*

(Section II)

1. **Limits of Liability.   Our** total liability under Coverage E for all damages resulting from one **occurrence** will not exceed the limit for Coverage E shown on the Declarations. This is true regardless of the number of **insureds**, claims made or persons injured.

   **Our** total liability under Coverage F for all medical expense for **bodily injury** to one person resulting from one accident will not exceed the limit for Coverage F shown on the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition does not increase **our** limit of liability for one **occurrence**.

3. **Duties after Loss.**  In case of a loss, **you** must perform the following duties. **You** must cooperate with **us** in seeing that these duties are performed.
   a) give notice to **us** or **our** agent as soon as practicable setting forth:
      (1) identity of the policy and **insured**.
      (2) time, place, and facts of the accident or **occurrence**.
      (3) names and addresses of the claimants and witnesses.
   b) immediately forward to **us** every document relating to the accident or **occurrence**.
   c) at **our** request, assist in:
      (1) making settlement.
      (2) enforcing a right of contribution or indemnity against a person or entity who may be liable to an **insured**.
      (3) conducting suits, and attending hearings and trials.
      (4) giving evidence and asking witnesses to attend.
   d) under the coverage — Damage to Property of Others:
      (1) submit to **us**, within 60 days after the loss, a sworn proof of loss; and
      (2) exhibit the damaged property, if within the **insured's** control.
   e) the **insured** shall not, except at the **insured's** own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.**  The injured person or someone on behalf of the injured person will:
   a) give **us** written proof of claim, under oath if required, as soon as possible.
   b) authorize **us** to obtain copies of medical reports and records. The injured person will submit to physical examination by a physician **we** select. This may be as often as **we** require with good reason.

5. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. No one has a right to join **us** as party to an action against an **insured**. No action with respect to Coverage E can be brought against **us** until the obligation of the **insured** has been determined by final judgment or agreement signed by **us**.

6. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve **us** of **our** obligations under this policy.

# *Policy Coverage Options*

The following options apply only if they are indicated on the Declarations. They are subject to all provisions of this policy except as modified herein.

**Option A.   Jewelry.** The coverage for jewelry, watches and furs is amended as follows:

**We** will pay for accidental direct physical loss except that caused by:

1.   wear and tear or mechanical breakdown.

2.   gradual deterioration or inherent vice.

3.   insects or vermin.

4.   losses excluded under Section I — Property Exclusions that apply to personal property.

**Option B.   Guns.** The coverage for guns, including accessories is amended as follows:

**We** will pay for accidental direct physical loss except that caused by:

1.   wear and tear, mechanical breakdown or gradual deterioration.

2.   insects or vermin.

3.   refinishing, renovating or repairing.

4.   dampness or temperature extremes, rust, fouling or explosion.

5.   inherent defect or faulty manufacture.

6.   breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.

7.   losses excluded under Section I — Property Exclusions that apply to personal property.

**Option C.   Cameras.** The coverage for cameras (film, digital or video), including accessories, is amended as follows:

**We** will pay for accidental direct physical loss except that caused by:

1.   wear and tear, mechanical breakdown or gradual deterioration.

2.   renovating or repairing, rust, dampness or temperature extremes.

3.   inherent defect or faulty manufacture, insect or vermin.

4.   breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.

5.   losses excluded under Section I — Property Exclusions that apply to personal property.

The limits of liability for property covered by **Options A, B or C** are amended as follows:

The option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against.  It is the total limit, with a $1,000 maximum for any one item, for loss by:

1.   theft; or

2.   a covered peril other than the Coverage C — Personal Property Perils Insured Against.

**Option D.**  **Silverware.** The coverage and limits of liability for silverware, silver-plated ware, goldware, gold-plated ware and pewterware is amended as follows:

**We** will pay for accidental direct physical loss except that caused by:

1.  wear and tear, mechanical breakdown or gradual deterioration.

2.  renovating or repairing, rust, dampness or temperature extremes.

3.  inherent defect or faulty manufacture, insect or vermin.

4.  breakage, marring, scratching, or denting; unless caused by fire, thieves or vehicular accident.

5.  losses excluded under Section I — Property Exclusions that apply to personal property.

This option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against.  It is the total limit for loss by:

1.  theft; or

2.  a covered peril other than the Coverage C — Personal Property Perils Insured Against.

**Option E.**  **Tools.** The special limit of liability applying to tools is increased to the amount shown on the Declarations.

**Option F.**  **Money.** The special limit of liability on money, bank notes, bullion, gold (other than goldware), silver (other than silverware), platinum, coins, stored value cards, smart cards, gift certificates and medals is increased to the amount shown on the Declarations.

**Option G.**  **Securities.** The special limit of liability on securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets is increased to the amount shown on the Declarations.

**Option H.**  **Computers.**  The special limit of liability on computers, including hardware and software accessories is increased to the amount shown on the Declarations.

**Option I.**  **Business Property.** The special limit of liability on **business** property is increased to the amount shown on the Declarations. It includes up to $250 of coverage for **business** property off the **residence premises**.

**Option J.**  **Extended Replacement Cost Coverage.**  Option J does not increase the policy's limit of liability.

1.  Loss to the following property shall be settled at replacement cost or the full cost to repair without deduction for depreciation:

    a)  property covered under Coverage C — Personal Property.

    b)  outdoor antennas, carpeting (including wall-to-wall), home appliances, and awnings.

    **"Replacement cost"** means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When the identical article is no longer available, **replacement cost** shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

    **Our** liability for loss under this coverage shall be the lesser of:

    a)  **replacement cost** at the time of loss;

    b)  full cost of repair;

    c)   any special limits of liability described in this policy or attached by endorsement; or

    d)   **our** cost to repair or replace any part of the damaged or stolen property with equivalent property.

**We** will not pay more than the **actual cash value** of the damaged or stolen property until it has been repaired or replaced.

2.   **You** may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of the repair cost, **replacement cost**, any special limit of liability that applies or the **actual cash value** of those items. If **you** later decide to repair or replace those items, **you** may make an additional claim within 180 days after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the 180 days, but payment will not be made until proof of repair or replacement is provided to **us**.

3.   This coverage does not apply to:

    a)   manuscripts, antiques or fine arts which by their inherent nature cannot be replaced with new articles.

    b)   memorabilia, souvenirs, collectors' items, and other items whose age and history contribute substantially to their value.

    c)   property not maintained in good or workable order.

    d)   property which is obsolete or useless to **you** at the time of loss.

The **actual cash value** provisions of this policy apply to the preceding items 3.a) through 3.d).

**Option K.**   **Replacement Cost Plus (Dwelling) (Increased Coverage A Limit).** When a loss covered by this policy occurs to the dwelling in which **you** live, located at the **residence premises**, **we** will settle losses, subject to applicable deductibles, according to the policy provisions.

If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A — Dwelling Limit of Liability, **we** will pay up to a maximum of an additional 20% of the Coverage A limit for the additional cost. This additional amount applies only to the dwelling insured under this policy identified as the **residence premises** on the Declarations. This coverage does not increase or affect any other coverage limit or limit of liability in this policy. This additional payment is subject to the following provisions:

**SPECIAL CONDITIONS:**

**You** must:

1.   insure the dwelling in which **you** live, located at the **residence premises**, to 100% of the cost to repair or replace it; and

2.   accept the annual adjustment in the Coverage A — Dwelling limit of liability due to Inflation Protection Coverage and pay the premium charged; and

3.   notify **us** within 90 days of the start of any physical improvements or additions which increase the replacement cost value of **your** dwelling by $5,000 or more and pay any additional premium due.

**You** must comply with these special conditions or **we** will pay no more than the policy limit in effect on the date of loss, less applicable deductibles.

**ORDINANCE OR LAW EXCLUSION**

The additional amount provided by this option does not cover any increased cost resulting from enforcement of any ordinance or law regulating the construction, use or repair of any property, or requiring the tearing down of any property, including the cost of removing such debris.

**Option L.**   **Protective Device Credit.** For a premium credit, **we** acknowledge the installation of qualified protection devices on the **residence premises**.

**You** agree to:

1.   maintain these devices in working order; and

2.   notify **us** promptly, of any changes made in the devices or if they are removed.

**Option M.**   **Personal Injury Coverage** under **Coverage E — Personal Liability**, the definition of **bodily injury** is amended to include **personal injury**.

**Personal Injury** means injury as a result of:

1.   false arrest, false imprisonment, wrongful eviction, or wrongful entry;

2.   wrongful detention, malicious prosecution, or humiliation;

3.   libel, slander, defamation of character; or

4.   invasion of rights of privacy.

Section II — Liability Exclusions do not apply to **personal injury**. **Personal injury** coverage does not apply to:

1.   liability assumed by an **insured** under a contract or agreement;

2.   injury caused by violation of a penal law or ordinance if committed by or with the knowledge or consent of an **insured**;

3.   injury sustained by a person as a result of an offense directly or indirectly related to that person's employment by the **insured**;

4.   injury arising out of or in connection with **business** pursuits of an **insured**;

5.   injury arising out of any professional liability;

6.   injury resulting from an **insured** transmitting a communicable disease, including injury arising from the possibility of such transmission;

7.   civic or public activities performed for pay, other than reimbursement of expenses, by an **insured**; or

8.   injury to an **insured** as defined in general Definitions 4.a) and 4.b).

**Option N.**   **Loss Assessment Coverage.**

**We** agree to pay **your** share of an assessment charged against all members of the **Association**. "**Association**" means the management body of the property owners. They must have common property interest with **you**. The common property must be part of the housing development where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown for this option on the Declarations, in effect at the time of the loss which results in an assessment.

The assessment must be the result of:

1.   a direct loss to property collectively owned by the **Association**. It must be caused by a peril covered under Section I of this policy;

2.  an event of the type covered by Section II of this policy; or

3.  damages the **Association** is legally obligated to pay due to **personal injury** as a result of:

    a)  false arrest, false imprisonment, wrongful eviction, or wrongful entry;

    b)  wrongful detention, malicious prosecution, misrepresentation, or humiliation;

    c)  libel, slander, defamation of character; or

    d)  invasion of rights of privacy.

This coverage is excess over other valid and collectible insurance covering the **Association**. Loss under subparagraph 1. is subject to the Section I deductible shown on the Declarations.

**Option O.   Building Ordinance or Law Coverage.**

**We** agree to cover the increased cost resulting from any ordinance or law regulating the:

1.  construction;

2.  repair;

3.  renovation;

4.  remodeling; or

5.  demolition;

of covered building structures damaged by a Peril Insured Against.

**LIMIT OF PAYMENT**

The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the Coverage A — Limit of Liability shown on the Declarations at the time of loss.  This is additional coverage.

The damaged or destroyed building structure must be repaired or replaced at the **residence premises**.

**SPECIAL EXCLUSIONS**

**We** will not pay costs:

1.  required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;

2.  resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.

    However, this exclusion does not apply if the total damage to the covered building structure is more than 50% of the building's replacement cost, less any ordinance or law expenses, at the time of the loss.

**Option P.   Limited Water Back up of Sewers or Drains Coverage.  We** will pay up to a maximum of $5,000 for all damage to:

1.  the Coverage A — Dwelling; and

2.  the following personal property:

    a)  clothes washers and dryers;

    b)  food freezers and the food in them;

    c)  refrigerators;

d)  ranges;

e)  portable dishwashers; and

f)  dehumidifiers;

caused by or resulting from water or water-borne material which:

a)  backs up through sewers or drains from outside the dwelling's plumbing system; or

b)  overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

## EXCLUSIONS

**We** do not cover:

1.  other personal property not specified above;

2.  loss caused by the negligence of an **insured**; or

3.  if the loss occurs or is in progress within the first five (5) days of the inception of this endorsement  unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

## DEDUCTIBLE

**We** will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations, or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

**Option Q.  Earthquake and Volcanic Eruption Coverage.**  **We** insure for direct physical loss to property covered under Section I — Property Coverages caused by earthquake or volcanic eruption.  Volcanic eruption means:

1.  eruption;

2.  explosion; or

3.  discharge;

from a volcano.

One or more earthquake shocks or volcanic eruptions that occur within a 72-hour period will constitute a single earthquake or volcanic eruption.

This coverage does not increase the limits of liability stated in the policy.

## DEDUCTIBLE

The earthquake and volcanic eruption deductibles are shown on the Declarations.  It replaces any other deductible provision in this policy for covered earthquake and volcanic eruption loss.

**We** will pay only that part of the loss over the earthquake deductible percentage shown on the Declarations. The percent deductible applies separately to each coverage limit and applies separately to loss under each Section I coverage. This includes Building Additions and Alterations Coverage if included in the policy. The deductible amount will not be less than the earthquake dollar deductible on the Declarations for any one loss.

**SPECIAL EXCLUSIONS**

**We** do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to, or aggravated by earthquake or volcanic eruption.

**Option R.   Broad Water Back up of Sewers or Drains Coverage.   We** will pay up to a maximum of five (5) percent of the Coverage A — Dwelling limit of liability, at the time of loss, for direct damage to covered property caused by or resulting from water or water-borne material which:

1.   backs up through sewers or drains from outside the dwelling's plumbing system; or

2.   overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

This is the most **we** will pay for all covered property under Coverage A — Dwelling, Coverage B — Other Structures and Coverage C — Personal Property.

**EXCLUSIONS**

**We** do not cover:

1.   loss caused by the negligence of an **insured**; or

2.   if the loss occurs or is in progress within the first five days of the inception of this endorsement unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

**DEDUCTIBLE**

**We** will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations, or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.



# *General Policy Conditions*

1. **HOW YOUR POLICY MAY BE CHANGED**
   a) Any part of this policy, which may be in conflict with statutes of the state in which this policy is issued, is hereby amended to conform.
   b) Any **insured** will automatically have the benefit of any broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.
   c) A waiver or change of a part of this policy must be in writing by **us** to be valid. **Our** request for an appraisal or examination does not waive **our** rights.
   d) The premium for the coverage provided by this policy and attached endorsements is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium.

2. **CONCEALMENT OR FRAUD**
   a) This policy is void as to all **insureds** if **you** or any other **insured** has intentionally misrepresented any material fact or circumstance which would have caused **us** not to issue or renew this policy.
   b) This policy does not provide coverage for all **insureds** if **you** or any other **insured**, either before or after a loss, has:
      (1) intentionally concealed or misrepresented any material fact or circumstance; or
      (2) committed any fraud or made false statements relating to such loss.

3. **RENEWAL**
   This policy is written for a specific policy period as shown on the Declarations. **We** will renew it for successive policy periods subject to the following conditions:
   a) Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by **us** at the time.
   b) All premiums or premium installment payments and fees must be paid when due.
   c) Prior to the expiration of a policy period for which premium has been paid, **we** will mail a notice to the named **insured** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us**.
   d) **You** agree to an interior inspection of **your** home by one of **our** representatives to determine **your** continued eligibility. Such inspection will not be performed more than once a year with proper advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of **your** policy.

4. **NON-RENEWAL**
   a) At the end of each policy period, **we** will have the right to refuse to renew this policy.
   b) If **we** elect not to renew, **we** will mail written notice to the named **insured**, at the address shown in this policy, at least 30 days before the renewal date of this policy. Proof of mailing shall be proof of notice.
   c) For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.

5. **CANCELLATION DURING POLICY PERIOD**
   Any named **insured** may cancel this policy at any time by returning it to **us** or by notifying **us** of the date cancellation is to take effect.

   **We** may cancel this policy only for the reasons stated in this condition by notifying the named **insured** in writing of the date cancellation takes effect. This cancellation notice will be mailed to the named **insured** at the address shown in the policy. Proof of mailing will be proof of notice.

*General Policy Conditions* _____

a) When premium has not been paid, whether payable to **us** or **our** agent or under a finance or credit plan, **we** may cancel at any time by giving notice at least 10  days before cancellation takes effect.

b) When this policy has been in effect less than 60 days and is not a renewal with **us**, **we** may cancel for any reason by giving notice at least 30 days before cancellation takes effect.

c) When this policy has been in effect for 60 days or more, or at any time if it is a renewal, **we** may cancel if:

    (1) there has been a material misrepresentation of fact which if known to **us** would have caused **us** not to issue this policy, or caused **us** to issue or renew this policy at a higher premium;

    (2) the risk has changed substantially since the policy was issued; or

    (3) the property or other interest has been transferred to another person, unless the transfer is permissible under the terms of this policy.

    This can be done by giving notice at least 30 days before cancellation takes effect.

d) When this policy is written for a period longer than one year, **we** may cancel for any reason at its anniversary by giving notice at least 30 days before cancellation takes effect.

When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. The minimum earned premium will not be less than the pro rata premium for the expired time or $25.00, whichever is greater.  If the return premium is not refunded with the notice of cancellation, **we** will refund it within a reasonable time after cancellation takes effect.

6. **POLICY TRANSFER**

This policy may be transferred to another only with **our** written consent.

7. **SUBROGATION**

a) When **we** have paid **you** for a loss covered under this policy and **you** also receive payment for the same loss from another person, entity or organization, the amount received will be held by **you** in trust for **us** and reimbursed to **us** to the extent of **our** payment.

b) An **insured** may, before loss occurs, waive in writing all rights of recovery against any person. The **insured** will provide **us** with proof of the waiver, when requested by **us**. If not waived, when **we** pay a loss, an **insured's** right to recover from someone else becomes **ours** up to the amount **we** paid. An **insured** must protect these rights and help **us** enforce them. This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

8. **DEATH**

If **you** die, **we** continue to insure:

a) the legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death.

b) a member of **your** household who is an **insured** at the time of death, but only while a resident of the **residence premises**.

c) with respect to **your** property, the person having proper custody of the property until appointment of a legal representative.

9. **ADDITIONAL INSURED - NON OCCUPANT**

An additional **insured** may be named in this policy.  The additional **insured's** interest in the **residence premises** is protected under Coverage A and Coverage B. The additional **insured** is also protected under Coverage E for liability from the ownership, maintenance, or use of the **residence premises**. This provision does not increase the amount of insurance.

10. **OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**

The first named **insured** may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment premium payment charge. **Your** agent or sales representative can provide more information.

11. **NON-SUFFICIENT FUNDS CHARGE**

The company reserves the right to impose a fee for any premium that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments. This is under the terms and conditions approved where required by the Department of Insurance.

12. **DIVIDENDS**

The first named **insured** is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## MUTUAL POLICY CONDITIONS

(Applicable only to policies issued by Nationwide Mutual Insurance Company — Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the first named **insured** is a member of the company issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the first named **insured** is entitled to one vote only — regardless of the number of policies issued to the first named **insured** — either in person or by proxy at meetings of members of said company.

The annual meeting of members of the Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of the Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday in April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the first named **insured** at the address last known to it. The company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning the first named **insured** is not subject to any assessment beyond the premiums the above companies require for each policy term.

**IN WITNESS WHEREOF:** Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, or Nationwide Property and Casualty Insurance Company, whichever is the issuing company as shown in the Declarations, has caused this policy to be signed by its President and Secretary at Columbus, Ohio, and countersigned as may be required by a duly authorized representative of the company.

**Secretary**

**President**

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company

**President**

Nationwide Property and Casualty Insurance Company



Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company
Home Office: Columbus, Ohio 43215-2220

L4